### Alpheus G. Smith and Others v. Isaac C. Kendall.

An instrument by which the makers promise to pay to the order of the payees, at a time and place named, a specific sum of money *with current exchange on New York,* is a promissory note, and the endorsee may may bring suit upon it in his own name.

*Heard May 1st. Decided July 11th.*

Error to Kent Circuit, where Kendall, describing himself as assignee of Henry C. Ely, Edward Brown and William H. McConnell, brought suit against Alpheus G. Smith, Daniel McConnell and William H. McConnell, on the common money counts, under which he recovered judgment upon the following instrument;

"$793.98.          NEW YORK, July 13, 1858.

Eight months after date, we, the subscribers, of Grand Rapids, county of Kent, State of Michigan, promise to pay to the order of Ely, Brown & McConnell, seven hundred and ninety - three 98-100 dollars, at the Banking House of Duncan Sherman & Co., value received, with current exchange on New York.

(Signed,)          SMITH & McCONNELL."

Endorsed by ELY, BROWN & McCONNELL.

William H. McConnell, was a member of each of the firms named in the instrument.

*J. T. Holmes*, for plaintiffs in error, insisted that this was not a promissory note, because not for a fixed and certain amount: — *Story on Notes*, § 20; 2 *Miles*, 442; 10 *Wend.* 93; 13 *Conn.* 280; 6 *Cow.* 108; 2 *Mich.* 130. Also that the averment in the declaration that Kendall was assignee of Ely, Brown & McConnell, should have been, but was not, proved.

*Withey & Gray*, for defendant in error.

MANNING J.:

The instrument for $793.98, it is argued, is not a promissory note, because it is payable with current exchange on New York. It calls for $793.98, if paid in the city of New York; if paid elsewhere it calls for that amount with such additional sum, called exchange, as will make the amount where paid equivalent to $793.98 in the city of New York.

A promisory note must be for the payment of a certain sum of money. Exchange varies from time to time, and might have been more or less when the $793.98 were to be paid than when the instrument was given. Is this fluctuation, to which exchange is subject, such a contingency or uncertainty as the rule requiring a note to be for a sum certain was intended to guard against? We think not. Bills of exchange and promissory notes are commercial instruments, and to facilitate commerce, are subject to certain rules of law not applicable to other contracts. These rules should be liberally construed, and in such a way as to effect the object had in view. Exchange is an incident to bills for the transmission of money from one place to another. Its nature and effect are well understood in the commercial world ; and merchants having occasion to use their funds at their place of business, sometimes make the

currency at that point the standard of payments made to them by their customers at a different point. Such is the design of the instrument before us; and we believe such instruments are considered by commercial men to be promissory notes. In *Pollard v. Herries*, 3 *B. & P.* 335, P. deposited a sum of money with H. in Paris, and took H's note "payable in Paris, or at the choice of the bearer at the Union Bank in Dover, or at H's usual residence in London, according to the course of exchange upon Paris." This instrument was declared on as a promissory note, and spoken of and treated by both counsel and court as a promissory note. It is called a promissory note by the reporter, and treated as such by Mr. Chitty in his treatise on Bills of Exchange, *pp.* 232, 424. In *Leggett v. Jones*, 10 *Wis.* 34, a written promise to pay a sum of money "with exchange on New York," was held to be promissory note.

There is nothing in the other objection. The note was endorsed by Ely, Brown & McConnell, and every indorsee is the asignee of the endorser. The judgment must be affirmed with costs.

MARTIN CH. J., concurred.

CHRISTIANCY J.:

I concur in the opinion of my brother Manning. So far as relates to the question of exchange, I think this note should be considered as resting upon substantially the same principle as if made payable in New York without exchange.

CAMPBELL J., dissenting:

I do not think that a negotiable promissory note can be made except for a sum certain. This is an old and familiar doctrine, which is laid down by the best authorities without qualification. And while it is undoubtedly true that railroad bonds and some other securities of like character, made by corporations, have been held negotiable, yet there is no real difference between these and ordinary negotiable paper

except in their being under a corporation seal, which is merely the most appropriate evidence of corporate action. The requisites of certainty, both as to time and mode of payment, have always been regarded as substantial, and as the most essential elements of paper made for circulation and payable to the holder. And although a *quasi* negotiability has been asserted of bills of lading and some documents of like character, yet complete negotiability has never been extended beyond such paper as has, since the statute of Anne, possessed that quality by commercial law. And it does not seem to me in harmony with any principle of law to break down the settled rules which have given value and currency to such securities. If negotiability only meant the liability to be sued in the name of a bearer or indorsee, it would be of little consequence. But when paper is made negotiable, it passes from one to another discharged of all equities, until its maturity. The parties who make, or accept, or indorse it, become subject to peculiar liabilities. And I do not think any thing short of a clear legislative authority should be permitted to affix such burdens or privileges to any new class of contracts.

In the case of *Pollard v. Herries*, 3 *B. & P.* 335, the action being between the immediate parties to the note, no question arose concerning its negotiable character; and there is no English case, that I am aware of, which has given any countenance to innovation on this subject. So far as any practice has existed in this State, in relation to notes payable with exchange, I believe it has not been in favor of their negotiability. The question has been raised several times in the Federal Court within my own experience, and every case I have known has held them not to possess that character. And I doubt exceedingly whether the general opinion of commercial men is by any means settled in their favor.

There is no reason why one kind of uncertainty should

be more favored than another. It is very well settled by most courts, that a note payable in current bank bills is not negotiable. And yet the principal objections to allowing bank bills for this purpose apply to exchange. They both fluctuate in value under very similar conditions. The difference of exchange between two places has no direct connection with the expense of transporting money. It is as cheap to take money from New York to London as from London to New York, and yet there is a difference of about ten per cent. in favor of London, almost always. There are, however, no means of calculating the rate in advance; and fluctuations of several per cent. occur within a few weeks. Nor can the promise contained in the note before us be regarded as equivalent to an agreement to pay what will make a uniform sum in New York. This can only be on the assumption that the balance of exchange will always be one way; whereas it is very well known that there is no such certainty. And this note would not 'be satisfied by a payment of less than the sum mentioned in it, although it might be worth much more than the same amount in New York. It is very true that New York is likely to have balances against us, but the principle adopted, if true at all, must apply to all places.

It may be that public convenience would be subserved by changing the existing rules. But to hold this paper negotiable would, I think, be not an application of a common law principle to a new subject, but the abrogation of a principle entirely. This would come more appropriately from another department of the government. I regret that I have not been able to satisfy myself with the conclusions of the court upon this question, which is certainly one of general interest. Upon the other points in the case I concur.